United States District Court
District of Massachusetts

| | |
|---|---|
| KASHMONI MURPHY, ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil Action No. |
| v. ) | 12-11114-NMG |
| ) | |
| THOMAS DICKHAUT, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This habeas petition, filed by petitioner Kashmoni Murphy ("Murphy"), arises out of his conviction for masked armed robbery on November 8, 2005 in Massachusetts Superior Court.

**I.  Background**

    **A.  State Court Proceedings**

In November, 2002, Murphy was indicted for committing armed robbery while masked, armed robbery, assault and battery with a dangerous weapon and assault with a dangerous weapon. The grand jury also indicted Michael Brown ("Brown") for the same crimes.

Before trial commenced, Murphy and Brown moved to suppress the police-station identification of the defendants by Caesar Nichols ("Nichols"). The trial court denied that motion. Murphy moved to sever the trials. That motion was also denied. Murphy and Brown were tried together.

Nichols, a victim and the only eyewitness to the robbery, testified as to his present recollection of the event. He

-1-

remembered that the Athlete's Foot store where he worked was robbed by two men at gunpoint on October 29, 2002, that one man was masked and one was not and that the robbers stole cash, several pairs of boots and the store's surveillance video. He also testified that he had identified two men from a photo array presented to him at the police station that same day but that he did not see the men who had robbed the store or who he had identified at the photo array present in the courtroom.

The Commonwealth attempted to refresh Nichols's recollection using the transcript from his grand jury testimony. He testified that it had taken him only a short time to identify the robbers and that they had stolen several pairs of size 11 Timberland boots. Nichols reviewed his grand jury testimony that he had recognized the individuals he had identified as people from the neighborhood who had visited the store. Although he testified consistently with that testimony, he did not state that his memory had been refreshed.

The Commonwealth then called Detective Avery ("Avery") of the Boston Police Department. He testified about Nichols's selection of photos from a photo array. Avery explained that he used characteristics of the suspects provided by Nichols to generate a photo array of 200 photos. He noted that Nichols had identified the 112th and 113th photos as the men who committed the robbery.

Avery then testified, despite being warned against doing so, that the individuals had previously been arrested together. Brown and Murphy both moved for a mistrial. The trial court denied the motions but instructed the jury to disregard the testimony. Avery then testified that the photos selected by Nichols depicted Brown and Murphy and were from the Boston Police Imaging System. Avery explained that the 112th photo was of Brown and that Nichols had identified him as the man wearing the mask based on his voice and appearance. Nichols identified the 113th photo as the man with the gun whom Avery identified as Murphy.

Avery also testified that Brown was arrested after emerging from the basement of his home to which he had fled when the police announced their presence. Upon searching the basement, Avery testified, the police found several pairs of unworn Timberland boots. Avery testified that he took the boots to Charles Lature ("Lature"), the owner of the store. He explained that Lature identified the boots as being from his store and gave him a receipt. Neither defendant objected to that portion of Avery's testimony.

Finally, the Commonwealth called Malcolm Hayes ("Hayes"), an employee of the Information Technology Department of the Suffolk County Sheriff's Department ("the Department"). Hayes explained that inmates housed at the Suffolk County House of Correction are able to make collect calls from the facility. He

-3-

noted that each inmate is assigned a Personal Identification Number ("PIN") he must enter before making a call.

Hayes testified that the Department maintains a call log of all calls made and produces an audio recording of each call which is then archived. He also testified that at the beginning of every collect call a message is played that the call is being recorded. Hayes noted that the Department typically produces the recordings in response to subpoenas.

The Commonwealth then offered into evidence several recordings of jailhouse calls. Brown and Murphy both objected but the trial court ruled that the recordings were admissible to show Brown's consciousness of guilt and to help the jury evaluate Nichols's credibility. The trial court excluded the portions of the calls that made any reference to Murphy. The Commonwealth then played a series of calls that were made from Brown's PIN number to an unknown individual. Although the recordings are difficult to understand, they appear to capture Brown's efforts to influence the testimony of Nichols and to construct a defense.

At the close of the Commonwealth's case, Brown and Murphy moved for a mistrial and for directed verdicts. The trial court ruled that the jury could consider Avery's testimony about the identification as substantive evidence of guilt and denied the motions. Neither defendant offered any evidence.

During closing arguments, the Commonwealth argued, without objection, that the jury should credit Nichols's grand jury testimony over his in-court testimony. The Commonwealth relied heavily on the jailhouse phone calls, arguing that Nichols's testimony was accurate until someone influenced him and he became scared.

The trial court then instructed the jury on the law. Specifically, it explained that if the jury determined a joint venture existed, it could consider statements made by either defendant during the existence of the venture against the other. Immediately thereafter, the trial court instructed the jury about its use of the jailhouse calls, "in particular with respect to the instruction on joint venture." The trial court explained that the jury could consider the recordings "only with respect to Mr. Brown" and that it could consider whether the calls reflected feelings of guilt.

The jury found Brown and Murphy guilty of all four counts. The trial court sentenced Murphy to 18-20 years in prison on the charge of masked armed robbery. Murphy's sentences on the other charges were to be served concurrently with that sentence.

In November, 2005, Murphy filed a timely notice of appeal. The appeal was entered in the Massachusetts Appeals Court in June, 2007 but was stayed while Murphy filed a motion for a new trial in November, 2007. In June, 2009, the Suffolk Superior Court vacated Murphy's convictions for armed robbery, assault

and battery with a dangerous weapon and assault with a dangerous weapon but denied the motion with respect to the masked armed robbery conviction.

In July, 2009, Murphy filed a timely notice of appeal from the denial of his motion for a new trial on the masked armed robbery conviction which was consolidated with his direct appeal. In January, 2011, the Appeals Court affirmed Murphy's conviction for masked armed robbery and the denial of his motion for a new trial. In February, 2011, Murphy filed an application for further appellate review with the Supreme Judicial Court which was denied in March, 2011.

### B. Federal Court Proceedings

Murphy filed the instant petition in June, 2012. He makes the following arguments: (1) the introduction of the jailhouse calls without providing him an opportunity to cross-examine the declarants violated his rights under the Sixth Amendment's Confrontation Clause; (2) the admission of Brown's statements in the calls violated the rule announced in <u>Bruton</u> v. <u>United States</u>, 391 U.S. 123 (1968) that "powerfully incriminating" statements cannot be cured with a limiting instruction; (3) the introduction of Lature's hearsay statements violated the Confrontation Clause and Murphy's right to due process; and (4) there was insufficient evidence to support Murphy's conviction.[1]

---

[1] Murphy voluntarily withdrew a fifth assignment of error.

## II. Legal Analysis

### A. Habeas Standard

A federal court conducting habeas review is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). State court factual findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). Resolutions of state law issues by state courts are binding. Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner

> can prevail only if the state court's decision [on the merits of a claim] "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

Tyler v. Cain, 533 U.S. 656, 660 (2001) (quoting 28 U.S.C. § 2254(d)(1)). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth" in Supreme Court cases or if the facts before the state court are "materially indistinguishable" from a Supreme Court decision but "nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision represents an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing

-7-

legal rule...but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08.

### B. Introduction of Jailhouse Phone Calls

Murphy argues that the Commonwealth's introduction and use of the jailhouse calls violated the Confrontation Clause. He first contends that the statements made in the calls were testimonial and were inadmissible absent an opportunity for cross-examination. Murphy also contends that the trial court's refusal to sever his trial from Brown's and the insufficiency of its jury instructions violated the Bruton rule. Murphy raised both claims in state court, satisfying the exhaustion requirement.

The Appeals Court rejected both arguments. It ruled that the introduction of the phone calls did not violate Murphy's confrontation rights because the statements were not offered to prove the truth of the matters asserted, but rather to show Brown's consciousness of guilt. Commonwealth v. Murphy, 78 Mass. App. Ct. 1119, at *2 (2011) (citing Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004)). It also reasoned that the statements were not admitted against Murphy because the trial court explicitly instructed the jury that it could consider the statements only against Brown. Id. Finally, it noted that none of the jailhouse calls admitted into evidence implicated Murphy. For those reasons, the Appeals Court concluded that Murphy's invocation of the Bruton rule was without merit. Id.

The Confrontation Clause "bars admission of testimonial hearsay in a criminal case unless the declarant is unavailable and the accused has had a prior opportunity for cross-examination." United States v. Earle, 488 F.3d 537, 542 (1st Cir. 2007) (citing Crawford, 541 U.S. at 68). The Supreme Court has made clear that the Confrontation Clause is not implicated if testimonial statements are offered for some purpose other than to establish the truth of the matter asserted. Crawford, 541 U.S. at 59 n.9. Moreover, a witness testifying at a

> joint trial is not considered to be a witness "against" a defendant if the jury is instructed to consider that testimony only against a codefendant.

Richardson v. Marsh, 481 U.S. 200, 206 (1987). If the jury is so instructed, courts assume that the jury followed the instruction and considered "the statement only for the proper purpose...and not the improper purpose." United States v. Figueroa-Cartagena, 612 F.3d 69, 85 (1st Cir. 2010).

Bruton created a narrow exception to the general rule that a court will assume that jurors follow instructions. Richardson, 481 U.S. at 207-08. If a codefendant's out-of-court statement facially incriminates another defendant, a limiting instruction is deemed insufficient and separate trials must be held absent an opportunity for cross-examination. Id. at 208-09, 211. If a codefendant's out-of-court statement incriminates another defendant "only when linked with evidence introduced later at trial," however, a limiting instruction is sufficient. Id.

The Appeals Court's decision was not "contrary to" established Supreme Court precedent. The decision applied relevant Supreme Court precedent and this case does not involve a set of facts materially indistinguishable from one confronted by the Supreme Court. Nor did the Appeals Court unreasonably apply governing standards to the facts of this case. The statements made by Brown and the unknown individual during the phone conversations did not facially incriminate Murphy. Indeed, the trial court excluded the portions of the calls that made any reference to Murphy. To the extent the phone calls incriminated Murphy, they did so only when linked with other evidence presented at trial. Moreover, <u>Bruton</u> and its progeny involve situations in which a codefendant makes a confession to police, unlike the facts of this case.

Murphy's argument that the trial court's jury instruction regarding use of telephone conversations was confusing or insufficient is without merit. Even if a codefendant's out-of-court statement was not so incriminating as to require separate trials, the trial court must instruct the jury on the proper use of such a statement. <u>United States</u> v. <u>Vega Molina</u>, 407 F.3d 511, 521 (1st Cir. 2005) (citations omitted). Here, the Appeals Court found that the trial court explicitly instructed the jury to consider the calls only with respect to Brown.

The Court concludes that the <u>Bruton</u> rule was not violated. Moreover, the jury was given a proper limiting instruction with

respect to the use of the phone calls. The Appeals Court therefore correctly determined that there was no Confrontation Clause violation. In line with Supreme Court precedent, it assumed that the jury followed the trial court's instruction. Brown and the unknown speaker in the calls were not witnesses "against" Murphy. See Richardson, 481 U.S. at 206.

There was also no Confrontation Clause violation for a reason not considered by the Appeals Court: the statements in the telephone conversations were not testimonial. The right to confront witnesses applies only to testimonial statements. Davis v. Washington, 547 U.S. 813, 821 (2006). The Bruton rule is similarly not triggered by nontestimonial statements. Figueroa-Cartagena, 612 F.3d at 85.

The Supreme Court has not set forth a "comprehensive definition" of statements that qualify as testimonial. Crawford, 541 U.S. at 68. The Court has nevertheless provided guideposts for evaluating whether statements are testimonial, offering several formulations of testimonial statements, the broadest of which includes "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 52. In determining whether a particular statement is testimonial, courts should consider whether the primary purpose of the statement is to "creat[e] an out-of-court substitute for trial testimony." Bryant, 131 S. Ct. at 1155. Co-conspirator

-11-

statements are, "by their nature," nontestimonial. Crawford, 541 U.S. at 56. Finally, "statements made unwittingly to a Government informant" and statements between prisoners are "clearly nontestimonial." Davis, 547 U.S. at 825.

The statements recorded in the phone calls bear little resemblance to formal statements courts have found to be testimonial. Nor is there any indication that Brown and the third party intended to create an out-of-court substitute for testimony to be used against Murphy or anyone else. Indeed, Brown and the other speaker appeared to go to great lengths to code their discussion. The statements are far more akin to co-conspirator statements, statements between prisoners and statements made unwittingly to an informant. Murphy's reliance on the fact that a message alerted participants that the calls would be recorded and could be used at a subsequent trial "does not necessarily denote 'testimonial' intent." United States v. Jones, 716 F.3d 851, 856 (4th Cir. 2013). Because the statements were not testimonial, there was no Confrontation Clause violation.

**C. Introduction of Store Owner's Statements**

Murphy next contends that admission of Lature's out-of-court statements that the Timberland boots recovered from Brown's home were from his store violated his right to confrontation. He also argues that the admission of those statements stemmed from ineffective assistance of counsel and

-12-

violated his right to due process.  Murphy raised that argument before the Appeals Court, though he failed to object to the admission of Lature's statements at trial.

The Appeals Court rejected that argument, reasoning:

> Whether viewed as unpreserved error or ineffective assistance of counsel, the admission without objection of the store owner's out-of-court statement to police that boots recovered in Brown's basement were from his store, created no substantial risk of a miscarriage of justice, given the wealth of properly admitted evidence to the same effect.

Murphy, 78 Mass. App. Ct. at *1.

A federal court conducting habeas review will not reconsider a state court's determination of an issue of federal law if the state court also decides the issue on an adequate and independent state-law ground. Coleman v. Thompson, 501 U.S. 722, 729 (1991).  State procedural default rules are an adequate and independent state ground. Id. at 731.  Massachusetts courts review issues not raised at trial for a substantial likelihood of a miscarriage of justice and such a review constitutes an adequate and independent state ground barring habeas review. Lynch v. Ficco, 438 F.3d 35, 45 (1st Cir. 2006).

Because the Appeals Court decided the issue on the basis of procedural default, this Court cannot consider whether admission of Lature's statements violated the Confrontation Clause unless an exception to the adequate-and-independent-state-ground rule applies.  There are two exceptions to the rule. Under the first exception, Murphy must show cause for the default and prejudice

-13-

stemming from it. See Coleman, 501 U.S. at 750. Under the second exception, Murphy must show that failure to review the claim will result in a "fundamental miscarriage of justice." Id. Murphy does not argue that failure to review the claim will result in a fundamental miscarriage of justice.

There are several circumstances that constitute adequate cause to excuse a procedural default. Most relevant here, attorney error amounting to a violation of the right to effective assistance of counsel constitutes adequate cause. Murray v. Carrier, 477 U.S. 478, 488 (1986).

The standard for showing ineffective assistance of counsel is the familiar two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). A petitioner must first show that counsel's performance fell measurably below objective professional standards in light of all the circumstances. Id. at 688. Here, Murphy must show that no competent attorney would have failed to object to the introduction of Lature's statements. See Lynch, 438 F.3d at 49. A petitioner must also show prejudice stemming from the error, meaning a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Murphy fails to satisfy either prong of the Strickland test. Trial counsel explained that he did not object to the introduction of the statements because his strategy was to

-14-

downplay the relationship between Murphy and Brown. Murphy contends that it was objectively unreasonable to fail to object to introduction of the statements on that basis because Avery had already testified that Murphy and Brown had previously been arrested together. The trial court, however, instructed the jury to disregard that testimony and that any prior involvement in the criminal justice system was irrelevant. This Court assumes the jury followed the court's instruction. Because no physical evidence tied Murphy to the crime, the central issue for jury was whether to credit Nichols's initial identification and grand jury testimony over his in-court testimony. In light of that factual background, this Court cannot say that no reasonably competent attorney would have failed to object in order to minimize the connection between Murphy and Brown.

Nor was the outcome reasonably likely to have been different had the evidence been excluded. The boots were not found in Murphy's home and had minimal relevance in determining his involvement. Moreover, as the Appeals Court concluded, a wealth of other evidence indicated that the boots found in Brown's basement were the boots taken from the Athlete's Foot store.

Murphy therefore fails to establish a <u>Strickland</u> violation and sufficient cause to excuse his procedural default. To the extent that Murphy contends that the introduction of Lature's testimony violated his right to due process in some other way,

he fails adequately to develop, and has therefore waived, that argument. See Perkins v. Russo, No. 02-10460-MLW, 2007 WL 2507741, at *3 (D. Mass. Aug. 31, 2007).

**D.  Sufficiency of the Evidence**

Murphy's final claim is that there was insufficient evidence to establish his identity beyond a reasonable doubt and that his conviction therefore violated his right to due process. Murphy adequately presented that claim to the Appeals Court.

The Appeals Court considered and rejected it, reasoning:

> The store manager's testimony that two men, one armed and one masked, robbed the Athlete's Foot, coupled with the substantive admission of the detective's testimony regarding the store manager's (later recanted) identification of the defendants was sufficient evidence to create a jury issue as to the defendants' guilt on the charge of armed robbery while masked.

Murphy, 78 Mass. App. Ct. at *2.  Murphy argues that the Appeals Court's decision represents an unreasonable application of the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).

In considering the sufficiency of the evidence, courts ask whether, viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.  A state court's determination of the sufficiency-of-the-evidence issue will not be disturbed "unless it evinces some increment of incorrectness beyond mere error." Leftwich v. Maloney, 532 F.3d 20, 23 (1st Cir. 2008).

-16-

The Appeals Court cited no authority or legal standard in its consideration of the sufficiency of the evidence.  Even if the state court's determination is not entitled to deference under AEDPA, see id. at 24, however, the evidence was sufficient to allow a rational trier of fact to find Murphy guilty beyond a reasonable doubt.

This Court assumes, of course, that the jury followed the trial court's instructions and did not consider the jailhouse telephone calls in considering Murphy's guilt.  Nevertheless, the trial court ruled that the jury could consider Nichols's prior identification of Murphy as substantive evidence of guilt.  The jury was thus faced with a decision as to whether to credit Nichols's identification of Brown and Murphy, men he claimed to have known from the neighborhood and who had visited the store, at the time of the robbery or his in-court testimony some three years later.  A rational trier of fact could reasonably choose to credit the contemporaneous identification.  That is particularly so in light of the fact that Nichols identified Brown as one of the robbers and the police subsequently discovered physical evidence corroborating Brown's involvement.  Moreover, because Murphy presented no evidence at trial, there were no facts before the jury to suggest that he was not involved.

Murphy makes much of the fact that the Supreme Court has suggested that although prior inconsistent statements may be

used as substantive evidence, reliance solely on such statements may nonetheless be insufficient to sustain a conviction. See California v. Green, 399 U.S. 149, 170 & n.19 (1970). Murphy does not suggest that reliance solely upon prior inconsistent statements is per se insufficient to sustain a conviction. Moreover, the jury had before it other evidence corroborating at least a portion of Nichols's initial identification. For the foregoing reasons, Murphy fails to show that no rational trier of fact could have found him guilty beyond a reasonable doubt.

## ORDER

In accordance with the foregoing, the petition of Kashmoni Murphy for writ of habeas corpus (Docket No. 1) is **DENIED**, and the action is **DISMISSED.**

**So ordered.**

/s/ Nathaniel M. Gorton\_\_\_\_\_
Nathaniel M. Gorton
United States District Judge

Dated May 19, 2014